UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDI MARTEL,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 16-cv-04872-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 13, 21 |

Plaintiff Randi Martel moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Martel not disabled and therefore denied her application for benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 et seq. The Commissioner cross-moves to affirm. For the reasons stated below, the court grants Martel's motion in part and denies it in part, grants the Commissioner's motion in part and denies it in part, and remands the matter for further consideration.

## I. PROCEDURAL HISTORY

Martel filed an application for Supplemental Security Income ("SSI") benefits on April 16, 2012, alleging disability beginning on January 1, 2011. Administrative Record ("A.R.") 210-218. Her application was denied initially on August 30, 2012 and again on reconsideration on February 19, 2013. A.R. 87-90, 93-97. On April 19, 2013, Martel filed a request for a hearing before an Administrative Law Judge ("ALJ"). A.R. 98. The ALJ conducted a hearing on October 16, 2014. A.R. 36-66.

After the hearing, ALJ Katherine Loo issued a decision finding Martel not disabled. A.R. 10-24. The ALJ determined that Martel has the following severe impairments: hypertension; hyperthyroidism; and depression. A.R. 15. The ALJ found that Martel retains the following

residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR [§] 416.967(b). Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours with normal breaks in an 8-hour workday; can sit for 6 hours with normal breaks in an 8-hour workday; can frequently climb ramps/stairs and ladders/ropes/scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; can frequently perform pushing/pulling with the bilateral upper extremities and bilateral lower extremities; can perform simple, repetitive tasks; can have occasional interaction with supervisors, coworkers, and the public; and can maintain attention and concentration for 2-hour increments with normal breaks.

A.R. 18. Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform other jobs existing in the economy, including marker, plastics inspector, and bottle packer, the ALJ concluded that Martel is not disabled. A.R. 23-24.

The Appeals Council denied Martel's request for review on June 23, 2016. A.R. 1-3. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Martel then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II.     THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

    1.     At the first step, the ALJ considers the claimant's work activity, if any. If the

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

1  claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2. At the second step, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

3. At the third step, the ALJ also considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

4. At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5. At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

### III. FACTUAL BACKGROUND

#### A. Martel's Testimony

Martel testified that she was 54 years old on the date of the hearing. She lives with her oldest daughter, two sons, and two grandchildren, and supports herself with GA and food stamps. A.R. 42, 53-54. She completed eighth grade. A.R. 42-43. Martel smokes half a pack of cigarettes per day and does not drink. She last used methamphetamine in February 2013. A.R. 55-56.

When the ALJ asked Martel to explain why she feels she is unable to work, Martel responded, "[m]y back is bad. My legs are bad. My wrists. My mind is very confused. I'm in treatment right now." A.R. 43.

As to her back, Martel testified that she has been diagnosed with scoliosis sciatica, pinched nerve, arthritis, and rheumatoid arthritis, but was unable to recall the specifics of her diagnoses of rheumatoid arthritis and arthritis. A.R. 43, 44-46. Martel testified that the only medication she takes for her back is Soma two times per day. A.R. 46-47. She had been prescribed other medications but stopped taking them because she "didn't want another addiction." A.R. 60. During questioning, the ALJ noted that Martel had only had treatment for her back "in the last year or two," and Martel responded that she had not gone "consistently" because she "had no way of transportation." A.R. 47. When she became unable to handle her back pain she "started going consistently" for treatment. A.R. 47. Martel testified that her back pain affects her as follows:

> I can't walk for long lengths of time. I can't sit still for long lengths of time. I wake up off and on all night long flipping from side to side. . . . I can't lift things like I used to.

A.R. 47-48. She clarified that she is unable to sit for longer than one hour at a time. A.R. 61. The heaviest thing she is able to lift is a gallon of milk. Some days she is able to lift and open the container of milk and pour a glass of milk; other days she drops the container. A.R. 61-62. She does not use anything to help her walk. A.R. 48.

As to her mental health, Martel has been seeing a therapist since 2014. A.R. 51. She testified that she does not know if the therapy is helping her, but that "somewhere in back of [her] mind" she feels that it is helping. A.R. 57-58. She testified that she used to go to therapy once per week, but then "had difficulties with [her] son" and is "trying to get it back to once a week." A.R. 58. In response to questioning by the ALJ about treatment notes showing therapy sessions only once or twice per month, Martel testified, "[n]o, it's more than that." A.R. 58. Martel's primary care physician, whom she sees once per month, prescribed Mirtazapine for depression, which she has been taking for "[a] couple months." A.R. 49-50. Her physician increased her dosage after a month, but she has not noticed a difference in her depression. A.R. 50.

In 2013, she moved to Indianapolis, Indiana to live with one of her daughters for a year. A.R. 51. While she was living in Indiana, she went to a clinic where she was diagnosed with high blood pressure, for which she takes medication. A.R. 49, 54. She moved back to California because she was "getting phone calls about two of [her] children." A.R. 52. One son was

diagnosed with paranoid schizophrenia and was hospitalized for a month and a half; her other son told her after a breakup that he had "nowhere to go," so she left Indiana and returned to California. A.R. 52-53.

Martel testified that when she wakes up, she showers, "roll[s] around a little bit," watches TV, and tries to do a "20 minute slow walk a day." A.R. 56. She used to be able to walk her dog three times a day, but became unable to walk the dog about a year ago. A.R. 61. She washes dishes and does laundry, but makes her children put the clothes in the dryer and take them out for her. A.R. 57. She is unable to push a vacuum cleaner. A.R. 57. Martel shares the cooking responsibilities with her family, and her daughter does the grocery shopping. A.R. 57.

Martel testified that she misses appointments and needs reminders. She also forgets what she is doing "[i]n the middle of doing, all the time." A.R. 59. She has difficulty sleeping and occasionally wakes up and does not know where she is. A.R. 59. She also does not like to be around other people. A.R. 59.

Martel testified about an examination she had had for Social Security "[a] couple years ago" that lasted about ten minutes. She testified that she would never forget what the examiner did: he put a coin in each of her hands, "[a]sked [her] to use each one with different hands to pull it out," laid her on a table, measured her legs, and told her that one leg was shorter than the other. A.R. 60. At the time of the examination she was unable to walk due to the pain. A.R. 61.

Although Martel has hepatitis C, she is not currently receiving treatment for that disease. A.R. 48-49.

**B. Relevant Medical Evidence**

    **1. Treating Providers**

        **a. LifeLong Medical Care 1F, 5F**

Martel received treatment at LifeLong Medical Care from 2011 through 2014 for various ailments, including depression and lower back pain. A.R. 330-338, 353-373. Handwritten progress notes dated February 27, 2012 indicate she complained of lower back pain radiating down her right leg, and rated the pain an eight on a scale of one to ten. A.R. 331. She was prescribed Soma and gabapentin. A.R. 332.

Chart notes from a February 15, 2013 office visit indicate that her physician, Rachel Fogel, M.D., assessed her "[right] sided back pain that radiate[d] to [her] thigh." A.R. 371. Dr. Fogel prescribed Soma, gabapentin, and naproxen. A.R. 372.

Radiculopathy and depression are listed among Martel's chronic problems at all of her visits in 2014. A.R. 353-54, 357, 362, 366. On April 9, 2014, Martel presented with back pain, reporting to Lauren Enteen, RN, that gabapentin was "not helpful." Enteen noted Martel's history of radiculopathy and sciatica. A.R. 366. During her next appointment with Dr. Fogel on May 14, 2014, Martel presented with bilateral weakness in her legs, as well as depression. A.R. 361. The chart notes indicate that Martel reported that her right sciatica was "better with Soma," which "helps her get out of bed." She "takes one in the morning and then [is] good all day." A.R. 361. Upon physical examination, Martel is noted as positive for "lumbar spine-lordosis," "stiff lower back, and "min. side to side flexion." A.R. 363.

Chart notes from Martel's June 27, 2014 appointment with Dr. Fogel indicate that she presented with stress/anxiety, liver pain, diarrhea, and bilateral knee pain. A.R. 357. At a July 30, 2014 follow up visit with Dr. Fogel, Martel complained of problems with her right leg, including thigh throbbing, groin pain radiating up the right side of her abdomen, and calf cramping with ambulation. Dr. Fogel noted "circumferential throbbing" in Martel's left leg, as well as "sharp shooting pains everywhere" and a "decreased ability to sit for too long or stand too long." A.R. 353. Dr. Fogel's notes also listed Martel's "chronic problems," including radiculopathy and degenerative joint disease of the lumbar spine and thoracic spine. A.R. 353-354. A column labeled "additional info[rmation]" indicate that an x-ray or x-rays from 2009 showed "mild" degenerative joint disease of the lumbar spine and thoracic spine and scoliosis. A.R. 354. Martel's cervical spine, thoracic spine, lumbar spine, and left hip exams were normal. A.R. 355. Her right hip was noted as "decreased ext. rot." A.R. 355. She had negative straight leg raises and normal balance and gait. A.R. 355. Dr. Fogel noted "atypical pain for radiculopathy or neuropathic etiology," and ordered x-rays for spine lumbrosacal, spine thoracic, and hip, although there are no x-rays in the record. A.R. 355.

        **b.**        **Treating Social Worker Jennifer Wachter, LCSW**

In a letter dated October 10, 2014, Jennifer Wachter at LifeLong Medical Care set forth her opinions regarding Martel's mental health history and diagnoses. A.R. 437-438. Ms. Wachter, who has provided psychotherapy services to Martel since May 2014, stated that her working diagnosis for Martel is post-traumatic stress disorder ("PTSD"), generalized anxiety, major depression, and methamphetamine dependence in full sustained remission. A.R. 437. According to Ms. Wachter, Martel "is not someone who can maintain gainful employment." A.R. 438. Ms. Wachter opined that Martel's "degree of anxiety and overwhelm, coupled with her depressive symptoms have a significant impact on her memory, her focus, and her follow-through." She also opined that Martel's substance abuse was not "a primary factor in regards to her disability." A.R. 438.

### 2. Consultative Examiner Calvin Pon, M.D.

Dr. Calvin Pon performed a physical examination on August 13, 2012. A.R. 339-341. He noted Martel's complaints of neck pain, bilateral hand numbness, and back pain. A.R. 339. Dr. Pon noted that Martel's gait was "normal with normal cadence, gait velocity, and stride length," and that she was able to squat approximately three quarters of the way down, but was limited by back pain. She was able to come to an upright position normally, and get on and off the exam table normally and without assistance. A.R. 340. Her neck, trunk, and thoracolumbar spine inspections were normal. On inspection of her upper extremities, Dr. Pon found hypertrophy of the MCP joint and PIP joint of the thumb. He also found that Martel had full active range of motion of her elbows and wrists, with no joint deformities or muscular atrophy. Her fine finger movements were intact bilaterally and she was able to pick up a coin normally with both hands and write legibly with her right hand. A.R. 340. Her lower extremities were normal upon inspection, with full active range of motion of hips, knees, and ankles. A.R. 340.

Dr. Pon diagnosed Martel with chronic neck pain and probable cervical disc disease with degenerative changes of the cervical spine; chronic back pain and probable spinal disc disease with degenerative changes of the thoracolumbar spine; and chronic bilateral hand numbness and possible carpal tunnel syndrome. A.R. 341. He found that Martel had no cervical radicular symptoms and that although she "stated that she had spinal x-rays, 'scoliosis,'" he had not noted

7

spinal curvature. A.R. 341. Further, although Martel complained of "associated right thigh pain and numbness," there was "no objective evidence of a right lumbosacral nerve root impingement." A.R. 341.

Dr. Pon opined that Martel can stand and/or walk for a total of six hours during an eight-hour workday, and sit for a total of six hours during an eight-hour workday. According to Dr. Pon, Martel can only occasionally stoop, crouch, kneel, and squat, but has no restriction in climbing stairs or ladders or crawling. A.R. 341. He also opined that she is able to lift and carry 10 pounds frequently and 20 pounds occasionally, with no limitations in her ability to perform reaching bilaterally or perform gross and fine manipulative tasks with both hands. A.R. 341.

### 3. State Agency Medical Consultant G. Lee, M.D.

G. Lee, M.D., a state agency medical consultant, reviewed medical records and assessed Martel's exertional limitations on February 15, 2013. A.R. 77-85. Dr. Lee opined that Martel has the ability to occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk for a total of six hours during an eight-hour workday; and sit for a total of six hours during an eight-hour workday. Dr. Lee also opined that Martel is unlimited in her ability to push and or pull. A.R. 82. Dr. Lee found that Martel has no manipulative limitations and can frequently climb ramps/stairs, climb ladders/ropes/scaffolds, balance, and crawl, and can occasionally stoop, kneel, and crouch. A.R. 83.

### IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the district court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not

affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

**V. DISCUSSION**

Martel challenges the ALJ's decision on several grounds. She argues that the ALJ erred 1) by failing to include her back impairment among Martel's severe impairments; 2) in assessing Martel's credibility; 3) in giving little weight to Wachter's opinion; and 4) in failing to develop the record.

The Commissioner cross-moves to affirm, arguing that the ALJ's decision is supported by substantial evidence and is free of legal error.

**A. Evaluation of Martel's Medical Impairments**

As noted, Martel argues that the ALJ erred by not including her back impairment in her analysis. She also argues that this error resulted in the ALJ's improper assessment of Martel's RFC.

**1. Legal Standard**

At step two of the five-step sequential evaluation for disability claims, the ALJ must determine whether the claimant has one or more severe impairments that significantly limit a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c); 416.920(a)(4)(ii) and (c). "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quotation omitted). The Ninth Circuit has held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citation omitted). "An impairment or combination of impairments can be

9

found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id*. (quotations omitted). A severe impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. In addition, when assessing a claimant's RFC, an ALJ must consider all of the claimant's medically determinable impairments, both severe and non-severe. §§ 416.920(e), 416.945; *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *see also* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments [because] limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.").

### 2. Analysis

The court concludes that the ALJ's finding that Martel's back impairment was non-severe at step two was not supported by substantial evidence. At step two, the ALJ found that Martel has the severe impairments of hypertension, hyperthyroidism, and depression. A.R. 15. While she noted Martel's diagnoses of sciatica and scoliosis, the ALJ concluded that Martel "does not have a severe back impairment." A.R. 16. However, the ALJ's discussion of Martel's back impairment contained no mention of Martel's diagnosis by her treating physician of degenerative joint disease of both the lumbar spine and thoracic spine, which was confirmed by 2009 x-rays (*see* A.R. 354). In fact, the ALJ appeared to focus her review of Martel's medical records on the period following the February 15, 2013 amended alleged onset date, rather than reviewing the record as a whole. A.R. 19. The ALJ also did not mention radiculopathy, which Martel's treating physician consistently noted was "chronic." *See* A.R. 353, 357, 362, 366, 371. The ALJ thus failed to explain her apparent determination that these impairments would not have more than a minimal effect on Martel's ability to perform basic work activities. To the extent that the ALJ determined that Martel's diagnoses of degenerative joint disease and radiculopathy were not severe, she erred in failing to consider their impact when determining Martel's RFC. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("the ALJ must consider the 'combined effect' of all the claimant's impairments without regard to whether any such impairment, if considered

10

separately, would be of sufficient severity." (citing 20 C.F.S. § 416.923)).

The Commissioner argues that the ALJ's determination regarding Martel's severe impairments was supported by substantial evidence. She points to the three reasons the ALJ offered for her finding that Martel's sciatica and scoliosis are non-severe: 1) there were no x-rays or MRI of her spine or nerve conduction studies; 2) Dr. Pon's August 2012 examination showed normal findings with respect to her trunk and thoracolumbar spine, with only reduced range of motion and no spinal curvature; and 3) Martel reported to her physician in May 2014 that she takes one Soma in the morning and then is "good all day." A.R. 16. However, these reasons are not substantial evidence supporting the ALJ's determination to altogether disregard Martel's degenerative joint disease and radiculopathy. As noted, Martel's treating physician referenced the 2009 x-rays supporting the diagnosis of degenerative joint disease, which the ALJ did not discuss. Further, while Dr. Pon's 2012 examination yielded mostly normal findings with respect to her trunk and thoracolumbar spine, he found reduced range of motion. A.R. 340.

The Commissioner also argues that any error in determining that Martel's sciatica and scoliosis were not severe was harmless since the ALJ continued to the other steps in the sequential evaluation process and weighed her back impairments in combination with the other severe and non-severe impairments. However, the Commissioner does not explain how the ALJ took into account the impact of Martel's degenerative joint disease and radiculopathy, given that she failed to acknowledge those diagnoses altogether. Accordingly, substantial evidence does not support the ALJ's determination of Plaintiff's severe impairments and assessment of Plaintiff's RFC.

**B. Martel's Credibility Assessment**

Martel next challenges the ALJ's determination that she was not credible.

### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs*., 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th

11

Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2. Analysis

The ALJ found that Martel's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Martel's] statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." A.R. 19. The ALJ identified three reasons for rejecting Martel's testimony: 1) the objective medical evidence did not support the level of restrictions alleged; 2) her poor work history; and 3) inconsistencies in the evidence and her testimony. A.R. 22-23.

As noted, in the absence of evidence of malingering, an ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez*, 572 F.3d at 591. The Commissioner first argues that the "clear and convincing reasons" standard does not apply here because the ALJ did not specifically find that Martel was *not* malingering. Def.'s Mot. 13. In *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015), the Ninth Circuit explained that where "an ALJ concludes that a claimant is not malingering," specific, clear and convincing reasons are required to reject a claimant's testimony about the severity of her symptoms. According to the Commissioner, the Ninth Circuit in *Brown-Hunter* did not require that the ALJ make an affirmative finding of malingering. In this case, the Commissioner argues, the ALJ specifically observed numerous inconsistencies in Martel's testimony and claims, which the Commissioner claims is "indicative of malingering." Def.'s Mot. 13. Accordingly, the ALJ was only required to provide reasons supported by substantial evidence to discredit her testimony. *See id*. at 14.

The Commissioner's position is without merit. The court in *Brown-Hunter* reaffirmed the well-established principle that because a reviewing court "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions," the ALJ must provide "some reasoning in order for the court to meaningfully determine whether the ALJ's conclusions are supported by substantial evidence." *Brown-Hunter*, 806 F.3d at 494. Here, the Commissioner asks the court to find that by identifying inconsistencies in Martel's testimony and the record, the ALJ made an affirmative finding of malingering, even though she did not actually state such a finding in her decision. The Commissioner's reasoning is flawed. The presence of inconsistencies does not necessarily point to malingering; for example, an inconsistency can be caused by poor memory or the effects of medication. As directed by the Ninth Circuit, this court "may not make independent findings based on the evidence before the ALJ," but is instead "constrained to review the reasons the ALJ asserts." *Id*. at 492. Since the ALJ did not conclude

13

that Martel was malingering, the clear and convincing reasons standard applies to the court's review of her credibility determination.

To support a finding of lack of credibility, the ALJ was required to "point to specific facts in the record which demonstrate that [Martel] is in less pain than she claims." *See Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009) (quoting *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993)). The court will review each of the ALJ's reasons in turn. First, the ALJ found Martel not fully credible because the objective medical evidence did not support the level of restrictions alleged by Martel. A.R. 22. The ALJ did not provide any further detail or identify the objective medical evidence to which she referred. However, as discussed above, the record contains objective medical evidence that Martel was diagnosed with degenerative joint disease of both the lumbar spine and thoracic spine, which was confirmed by x-rays. Her treating physician also diagnosed chronic radiculopathy. A.R. 353, 354, 362, 366, 371. Martel's records of treatment at LifeLong Medical Care from 2012 through the date of the hearing show that she consistently complained of back pain and pain radiating down her legs. A.R. 331, 353, 355, 366, 371. The ALJ did not acknowledge any of this evidence, even though it could support Martel's reported symptoms of back pain.

The ALJ also discredited Martel based on her poor work history, including the fact that "[a]t no point in the past 15 years did her earnings ever rise to the level of substantial gainful activity." A.R. 22. The Ninth Circuit has held that a claimant's "extremely poor work history" and "little propensity to work" can be a "specific, clear and convincing" reason to discount a claimant's testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The Commissioner argues that Martel's poor work history prior to her alleged onset date indicates that her unemployment "stemmed more from her lack of desire to work than her alleged debilitating impairments. Def.'s Mot. 17. Although the record is unclear because the ALJ made no such direct finding or statement in her decision, it is reasonable to conclude that this was the nature of the ALJ's inference.

Finally, the ALJ identified a series of "significant inconsistencies" in Martel's testimony and treatment records that weighed against finding her fully credible. A.R. 22. For example, at

14

the hearing, when the ALJ noted that Martel had only had treatment for her back "in the last year or two," Martel explained that she had not gone consistently because she "had no way of transportation" and "was struggling." A.R. 47. The ALJ found that this testimony was inconsistent with the fact that Martel "was able to go to the emergency room for flank pain." A.R. 22. The ALJ also identified the fact that Martel complained of disabling pain in her back, legs, and wrists, despite "minimal treatment records," as well as Martel's claim "to have not gone to the doctor when she was in 'real pain.'" A.R. 22. The court was unable to locate in the record Martel's supposed testimony that she did not go to the doctor when she was in "real pain," and the ALJ did not provide a citation. Martel actually testified that she started going consistently to the doctor for treatment when she "realized [she] couldn't do it no more." Martel told her children that she had to "get there on time because [she] couldn't handle the pains no more." A.R. 47. The ALJ also noted that Martel testified that she saw her therapist about once per week, but the treatment records indicated that she saw her therapist only about once per month, noting that most of her treatment records were "sporadic." A.R. 22; *see also* 437 (Wachter's letter stating "I have seen her once to twice a month."). However, the actual frequency of Martel's therapy is unclear. While the record does not contain treatment records consistent with Martel's claims of weekly therapy sessions, Martel testified that the therapist sometimes tells her "don't worry about the time" and "just talks to [her]" after Martel sees her medical doctor. A.R. 58. This is corroborated by a note from Wachter about having seen Martel on May 14, 2014, the same day Martel had an appointment with Dr. Fogel, even though there is no therapy treatment note from that date. *See* A.R. 364, 440. Therefore, although Martel may have somewhat overstated the frequency of her visits with her therapist, the ALJ's reliance on certain treatment records may have resulted in an underestimate of the number of visits. Finally, the ALJ noted that Martel stated throughout the hearing that "she could not remember many details related to her normal life," but that she remembered her consultative evaluation "vividly," including the detail that she held a coin in each hand. A.R. 22-23. However, the ALJ ignored that Martel also testified that she "couldn't understand" the evaluation and that it had "always bothered her." *See* A.R. 60. In sum, the court cannot agree with the ALJ's description of each of these as "significant inconsistencies" in

15

1 Martel's testimony, for although some are supported, others are not.

2 Taking the reasons offered by the ALJ as a whole, the court cannot conclude on this record that the credibility determination satisfies the "specific, clear and convincing" standard. Accordingly, the court concludes that the ALJ erred on this point.

### C. Wachter's Opinion

Martel next challenges the ALJ's decision to grant "little weight" to social worker Wachter's October 2014 opinion that Martel "is not someone who can maintain gainful employment" due to her anxiety and depressive symptoms and their impact on her memory, focus, and follow through. A.R. 438.

Social workers are not considered "acceptable medical sources" under the regulations. *Kelly v. Astrue*, 471 Fed. Appx. 674, 676 (9th Cir. 2012) (citing 20 C.F.R. § 404.1513(a)). Rather, social workers are "other sources" of evidence, and their opinions are not entitled to the same weight as those of "acceptable medical sources." *Id.* As such, their opinions are reviewed under the same standard used to evaluate lay witness testimony. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). To discount the opinion of a social worker, the ALJ need only provide "reasons germane to each witness for doing so.'" *Kelly*, 471 Fed. Appx. at 676 (quoting *Turner*, 613 F.3d at 1223-24). Here, the ALJ stated three reasons for discounting Wachter's opinion: 1) as a social worker, she is not an acceptable medical source for the purpose of establishing impairments; 2) Wachter's claim that she saw Martel once or twice per month was inconsistent with treatment records which showed that she had only seen Martel five times in five months; and 3) whether an individual is disabled or unable to work is an issue reserved to the Commissioner. A.R. 22.

The court concludes that the ALJ erred with respect to Wachter's opinion. The first and third reasons provided by the ALJ—that Wachter is not an acceptable medical source for the purpose of establishing Martel's impairments and that the question of whether an individual is disabled is an issue reserved to the Commissioner—are merely statements of the law. By themselves, they do not amount to "germane reasons" to discount Wachter's opinions. As to the remaining reason, the court is unable to assess it. The ALJ discounted Wachter's opinion because

the treatment records indicate that Wachter had only seen Martel five times over five months, even though Wachter claimed that she had seen Martel once or twice per month. A.R. 22, *see also* A.R. 437. To begin with, as discussed above, the ALJ's reliance on certain treatment records to provide an accurate count of therapist visits appears to have resulted in an undercount. Moreover, the court cannot determine whether this is a germane reason to discount Wachter's opinion, because the significance of the ALJ's observation is not clear. Specifically, it is not clear whether the ALJ highlighted this discrepancy to discredit Wachter's truthfulness, or whether the ALJ sought to show that Wachter's treatment relationship with Martel was so brief as to preclude her from forming a legitimate opinion. Accordingly, the court concludes that the ALJ erred with respect to Wachter's opinion.

### D. The ALJ's Development of the Record

Finally, Martel argues that the ALJ erred by failing to fully develop the record. Specifically, Martel contends that the ALJ should have obtained a psychiatric consultative exam and/or a medical expert regarding her mental health impairments. She also argues that the ALJ should have obtained the services of an orthopedic medical expert to determine if Martel's back impairment was severe.

While the ALJ has a "duty to fully and fairly develop the record," *Smolen*, 80 F.3d at 1288 (internal citation and quotation marks omitted), this duty "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan*, 242 F.3d at 1150); *see also* 20 C.F.R. § 404.1512(e); 20 C.F.R. § 416.912(e) (providing that SSA is to recontact medical sources to seek "additional evidence or clarification from [a] medical source when [a report] contains a conflict or ambiguity that must be resolved."). There is no ambiguity or inadequacy in the medical record that prevents proper evaluation. The court finds no error.

### E. Remand for Further Proceedings

Martel asks the court to remand for immediate award of benefits under the credit-as-true rule. Generally, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v.*

1 *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, a court may remand for an immediate award of benefits , "where the record has been fully developed and further administrative proceedings would serve no useful purpose." *Id.* at 593. In determining whether to remand for benefits, the Ninth Circuit has devised a "three-part credit-as-true standard." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Each part of the standard must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id*. A court is required to remand for further development of a disability case when, "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id*. at 1021.

Here, it is not clear that the ALJ would be required to find Martel disabled after addressing the errors identified in this order. Therefore, Martel's entitlement to benefits is not "clear under the applicable legal rules." *See Treichler v. Comm'r*, 775 F.3d 1090, 1103-04 (9th Cir. 2014). Accordingly, the court must remand for further proceedings.

## VI. CONCLUSION

For the foregoing reasons, Martel's motion for summary judgment is granted in part and denied in part. The Commissioner's motion for summary judgment is granted in part and denied in part. This matter is remanded for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: March 19, 2018



Donna M. Ryu
United States Magistrate Judge

18